**Richard CARMACK, Petitioner,**

v.

**RAILROAD RETIREMENT BOARD, Respondent.**

No. 89–2455.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1990.

Decided March 18, 1991.

Gwendolyn S. Froeschner, Columbia, Mo., for petitioner.

Marguerite P. Dadabo, Chicago, Ill., for respondent.

Before McMILLIAN, and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

Richard Carmack petitions for review of an order of the Railroad Retirement Board ("the RRB" or "the Board") denying his application for a disability annuity. *See Appeal of Richard O. Carmack*, Claims Appeal Docket No. 3562 (Sept. 23, 1988),

*aff'g* Dec. No. 88–366 (Feb. 29, 1988) (decision of appeals referee), *aff'g* R.R.B. No. A–497–42–9673 (June 12, 1987) (decision of RRB Bureau of Retirement Claims). On appeal, Carmack argues that the RRB's decision was not "supported by substantial evidence on the record as a whole." *Arp v. Railroad Retirement Board*, 850 F.2d 466, 468 (8th Cir.1988). We have defined "substantial evidence" as "such evidence that a reasonable person might accept as adequate to support a conclusion." *Id.* For the reasons stated below, we hold that the RRB's decision was supported by substantial evidence and accordingly deny the petition for review.

### I. Facts

In 1965 Carmack began working at a railroad station in Slater, Missouri, as an "operator-crew dispatcher." Before beginning this job, he received six months of on-the-job training. In this position, he "copied train orders, kept tabulation of cars, gave instructions to switching crews, and dispatched information on radio." (Administrative Record at 9.) He also wrote reports and had some supervisory duties. After 1976 the Slater facility gradually consolidated employees' jobs, and Carmack's work became more intense. In his last three years at Slater, Carmack began to work longer hours and was often absent because of headaches and stress. In June 1986 the railroad closed its Slater station and transferred Carmack to the Kansas City railroad station, about 125 miles from his home. In Kansas City, Carmack worked as a "clerk-yardmaster-operator-teleprocessing." (Administrative Record at 44.) Carmack received only a week of training, and his new job allegedly had "more duties than one person can handle." (Administrative Record at 46.) After Carmack moved to Kansas City, his health problems got worse. For instance, his hands began to shake, and sometimes the shaking prevented him from writing. Furthermore, his headaches began to impair his sight, his blood pressure rose, and he began to suffer from emotional problems. Carmack's emotional problems were exacerbated by the fact that his family did not move to Kansas City with him.

On September 24, 1986, Carmack retired. Carmack testified that he had looked for less stressful railroad jobs, but that he could not find any. After Carmack retired, his condition began to improve, and he now works on a farm in Glasgow, Missouri. However, Carmack still suffers from considerable back pain.

Five days after leaving his railroad job, Carmack filed the present claim for an occupational annuity under 45 U.S.C. § 231a(a)(1)(iv) (1988).[1] Section 231a(a)(1)(iv) provides that a present or former railroad employee is eligible for benefits if, *inter alia,* his or her "permanent physical or mental condition is such as to be disabling for work in [his or her] regular [railroad] occupation."

The RRB's Bureau of Retirement Claims ("the Bureau") denied Carmack's claims both initially and on reconsideration (Administrative Record at 53–56). In its decision, the Bureau assumed that Carmack's regular occupation was his Slater job, stating that his impairments would not "prevent [him] from performing [his] regular occupation of operator-crew dispatcher." (Administrative Record at 53.)

Carmack appealed the Bureau's decision to a RRB Appeals Referee ("the referee"). The referee affirmed the Bureau's decision (Administrative Record at 4–14) for two reasons. First, the referee found that Carmack's Slater job, rather than his more strenuous Kansas City job, was his regular railroad occupation. The referee explained that the two positions were so different that they "cannot be considered the same

---

**1.** In addition, it could be argued that Carmack is eligible for benefits under 45 U.S.C. § 231a(a)(1)(v) (1988), which allows former railroad employees to obtain additional benefits if they are "unable to engage in any regular employment." *See* F. Bloch, Federal Disability Law and Practice § 1.10, at 22 n. 21 (1984). However, Carmack admits that if he is not disabled under § 231a(a)(1)(iv), the referee should not have discussed § 231a(a)(1)(v). *See* Brief for Petitioner at 23–24. Accordingly, we decline to address Carmack's eligibility for benefits under § 231a(a)(1)(v).

job." (Administrative Record at 12.) [2] Second, the referee found that Carmack was capable of performing both his Slater job and other jobs in the local economy (Administrative Record at 12).

Carmack then appealed the referee's decision to the RRB, which summarily rejected his appeal, with one member dissenting. (Administrative Record at 2–3.) This appeal followed.

## II. Issues

The RRB apparently concedes that Carmack was incapable of performing his Kansas City job (Administrative Record at 12). Thus, the questions presented are (1) whether Carmack's Slater position was his "regular railroad occupation" under § 231a(a)(1)(iv), and (2) if so, whether he is disabled from performing that job.

### A. Regular Railroad Occupation: Slater or Kansas City?

Carmack argues that his Kansas City job, rather than his Slater job, was his "regular railroad occupation" because (1) the two positions were in fact the same job, and (2) the Slater position no longer exists. Each of these contentions will be addressed below.

#### 1. Slater and Kansas City—Two Jobs or One?

■ The referee found that Carmack's Kansas City job was "an expanded and more intense version of the occupation of operator-Crew Dispatcher that he held in Slater, Missouri to the extent that it cannot be considered the same job." (Administrative Record at 12.) The referee found that because Carmack spent more time in Slater than in Kansas City, his Slater job was his regular railroad occupation.

On appeal, Carmack argues that his Slater and Kansas City positions were one job. Carmack claims that the Slater job had evolved over the years until it became nearly as stressful as the Kansas City job. For

instance, Carmack had to supervise large numbers of people during his last years at Slater, and he began to suffer from hypertension and anxiety as early as 1983. Indeed, he testified that if his Slater job had not been abolished, his anxiety would have forced him to retire. On the other hand, Carmack was able to work at Slater for three years after he began to see a physician, while he retired only three months after starting work in Kansas City. Thus, it appears that even Carmack's last few years at the Slater railroad station were far less stressful than his three months at the Kansas City station.

Carmack also argues that even though the volume of work involved was greater in Kansas City, both jobs involved similar duties. However, Carmack's application for benefits suggests that the two jobs were quite different. The application lists his Slater and Kansas City jobs separately, describing the first job as an "operator-crew dispatcher" position and the second as a "clerk-yardmaster-operator-teleprocessing" position (Administrative Record at 44). Carmack describes his Slater position as follows: "The job I held at Slater, Mo. for about 15 years included duties of crew [dispatcher] which was calling crews for trains and keeping records of crews, [a] small amount of teleprocessing work and ... copying train orders and messages." (Administrative Record at 45.) By contrast, his Kansas City duties included:

> duties of the former operators job, yard clerk, yardmaster, agent and teleprocessing operator. The job has more duties than I can handle. We make lists of trains ... by writing the car numbers on list, keeping yard report up to date ... doing yardmaster work by lining up transfers in and out of yards, making interchange reports in computer ... working with train [dispatchers] in Chicago as to calling trains outbound and helping trains move through the [Kansas] City terminal via radio and telephone.

---

2. If, as the RRB found, the two jobs are separate, the Slater job was Carmack's "regular occupation" because his job at Slater lasted longer. See 45 U.S.C. § 231a(a)(2) ("regular occupation"

means "occupation in which [the employee] shall have been engaged in more calendar months than ... in any other occupation").

The company has cut so many jobs off and put all on one person.

(Administrative Record at 46.)

Moreover, Carmack's exertional requirements in the two jobs differed. His Slater job required him to walk two hours per day and reach "sometimes," while the Kansas City job required him to walk three hours per day and reach "often." (Administrative Record at 45–46.) Furthermore, the Kansas City position required him to work extensively with other railroads (Administrative Record at 114).

Accordingly, we hold that the referee's finding that the two positions were separate occupations was supported by substantial evidence on the record as a whole.

### 2. Does Abolition Matter?

■ Carmack next suggests that even if his two positions were separate jobs, the Kansas City position should be considered to be his "regular occupation" because the Slater job and other less strenuous railroad positions have been abolished.

However, 45 U.S.C. § 231a(a)(2) states that an employee's "regular occupation" is the occupation at which he or she worked the longest, without making any exceptions. *See Peppers v. Railroad Retirement Board,* 728 F.2d 404 (7th Cir.1983). In that case, the claimant argued that "because no employer, including Conrail—his former employer, will hire him, the [Railroad Retirement] Board erred in finding him able to work." *Id.* at 406. The court rejected this argument, holding that "there is no need for the Board to demonstrate the existence of particular jobs for which the appellant would actually be hired," *id., citing Goodson v. Railroad Retirement Board,* 595 F.2d 881, 883 (D.C.Cir.1979) (RRB "need not demonstrate the existence of particular jobs for which appellant would actually be hired" unless the claimant "demonstrated that he was unable to continue in his former occupation"). If the availability of railroad jobs is irrelevant to whether a claimant is disabled from his regular railroad occupation, it logically follows that the abolition of such jobs is equally irrelevant. Accordingly, we hold

that even if Carmack's Slater job has been abolished, it is his "regular occupation" under § 231a(a)(1)(iv).

### B. *Was Carmack Disabled from Performing His Slater Job?*

■ Carmack next argues that even if his Slater job were his regular railroad occupation, he is disabled from performing that position. The referee rejected this argument, finding that Carmack's symptoms were "of a lesser degree [than his symptoms in Kansas City], sufficient not to be considered disabling." (Administrative Record at 12.)

On appeal, Carmack argues that he is disabled from performing his Slater job, because of (1) his psychological problems, such as anxiety and agoraphobia, (2) resulting physical problems such as hypertension, and (3) his back pain, which allegedly prevents him from standing or walking for more than an hour at a time. Specifically, Carmack alleges that during his last few years in Slater, he "was feeling so much pressure that he was having to show up an hour early and leave an hour early to get his work done and that he would then have to lay out of work quite a bit for headaches induced by stress." Brief for Petitioner at 18. As a result, he "felt he could not continue at Slater." *Id.* Carmack further argues that the referee erred in failing to ask vocational expert Terri Schmitz about the impact of Carmack's back pain on his functional capacity.

In addition to Carmack's own testimony, there are several medical reports in the record.

Dr. Hamid, a family practitioner, examined Carmack several times between 1983 and 1986 (Administrative Record at 66–73). Dr. Hamid found tachycardia (a rapid heart beat), hypertension, and psychological problems. Dr. Hamid also found, however, that Carmack's muscoskeletal system was normal (Administrative Record at 70) and did not discuss the degree of Carmack's impairment. Dr. Whitener, a pulmonary specialist, examined Carmack on October 23, 1986, and stated that Carmack's "primary complaint and only positive physical finding

is that of nervousness. He has no other abnormality which I can find." (Administrative Record at 63.) Dr. Whitener explained that Carmack's "primary problem is that he is separated from his family in view of recent changes in the railroad, and his place of employment being moved from Slater, Missouri to Kansas City.... [He suffers from] depressive symptoms related to his move and separation from his family." (Administrative Record at 61.) Thus, Dr. Whitener's report supported the referee's finding that Carmack would have been capable of working at his Slater job if the position still existed. Dr. Wasserman examined Carmack on February 24, 1987, and diagnosed him as suffering from generalized anxiety disorder and a dependent personality. Dr. Wasserman stated that Carmack's symptoms are "not severe" and that they started "during a period of work-related stress and unwanted separation from his family" (Administrative Record at 79.) Thus, Dr. Wasserman's report suggested that Carmack's disability, if any, arose out of his move to Kansas City. On September 25, 1987, Dr. Clark, a psychiatrist, examined Carmack. Dr. Clark found that Carmack's major problems were "Panic Disorder ... of moderate severity" and "agoraphobia ... of mild severity." He explained that "these disorders ... almost completely disrupt his ability to function on the job." (Administrative Record at 91.) Dr. Clark found that Carmack's last months in Slater were quite stressful, but added that "things ... [were] even more stressful in Kansas City" (Administrative Record at 92–93). Thus, Dr. Clark's report was apparently inconclusive as to whether Carmack's job in Slater was so stressful that Carmack is incapable of working at that job.[3]

None of the four medical reports discussed above found severe back pain. Furthermore, two of the reports found that Carmack's other physical and psychological problems were largely a result of his move to Kansas City, and therefore implicitly suggested that such problems would not have prevented him from returning to his regular railroad occupation at Slater. Moreover, Carmack's own application for benefits "did not list his back as a disabling condition," Brief for Petitioner at 9, and Carmack had informed an RRB employee that he had a "bad back ... but his present job does not require that he lift heavy items or equipment ... He does not list his back as one of his disabling conditions." (Administrative Record at 43.)

In sum, Carmack's claim of disability due to psychological problems, stress-related physical problems, and back pain has little support in the record. Thus, the referee's failure either to ask Schmitz about the impact of Carmack's back pain[4] on his functional capacity or to find that Carmack was disabled from performing his Slater job was not reversible error. We hold that the RRB's finding that Carmack was not entitled to benefits under 45 U.S.C. § 231a(a)(1)(iv) is supported by substantial evidence on the record as a whole.

Accordingly, we deny the petition for review.

---

3. In addition, the record contains two nearly illegible medical reports (Administrative Record at 74, 87–90). The signature on each report is also illegible.

4. We therefore decline to address the RRB's argument that Carmack waived his right to attack the referee's hypothetical question on appeal by failing either to object or to ask Schmitz an alternative hypothetical question about the impact of his back pain.